Good morning, Your Honors. May it please the Court, this is Edward Zass for Raymond Crum. This appeal is governed by the Supreme Court's decision in Tapia against the United States. Tapia held that the Sentencing Reform Act precludes district courts from increasing a defendant's prison term in order to promote his or her rehabilitation, which includes medical treatment. The Court here violated Tapia. It imposed the maximum prison term on each count of conviction, and one of the reasons it explicitly gave for doing so was the defendant's, quote, very serious need, dot, dot, dot, for medical and psychiatric treatment that will take a considerable amount of time. That's in the appendix at page 215. Let's assume we agree with that proposition. What is the effect of the appeal waiver here? Why wouldn't this be an error that falls within that waiver? Because this Court has consistently declined to enforce appeal waivers where the sentencing court relies on an impermissible factor. The issue typically arises with reliance on race or national origin or indigency, but this is no different. There's a factor that the Court prohibits courts from considering, and if a court relies on that factor, the appeal waiver is not to be enforced. It's different, as a categorical matter, from the kinds of errors that are within the parties' contemplation when they negotiate the agreement. I'm just trying to make sure I understand your argument. The instances you allude to are constitutionally impermissible factors, and this is a statutory one. I'm having difficulty seeing why, if we accepted your argument, the appeal waiver would also not be given any effect. Whenever a mistake, was he a minor participant or a major participant? Well, they said major. That was impermissible, given the way the guidelines are written. What makes this different from other statutory mistakes that we routinely ignore? There's a categorical difference in that the parties who are waiving the right to appeal, a defendant who's waiving the right to appeal, understands that there are errors in calculation, there are guidelines mistakes, there's even sentences that they understand they may get a sentence that they different in kind from a reliance on a factor that the Congress has specifically prohibited. It's really a two-part argument. One looks at what is the reasonable understanding of the parties at the time that they entered into the agreement? The second part is, assuming that the parties contemplated this kind of waiver for this issue, will the court enforce that in light of the public policy concerns that are raised by it? Looking at each of those two, we think this waiver does not survive. The court approves the waivers narrowly and strictly against the government. Here, there's nothing in the agreement at all to suggest that the defendant was open to being sentenced to a longer period of time because he was so sick. What is the transcript that suggests that he was actually sentenced to a longer period of time because of the need for treatment? It's true that the court mentioned that he would benefit from treatment, and I gather that there were submissions by his family and by even his counsel potentially on his need for treatment. But the court referred to factors that are among those that are standard factors and permissible factors. I didn't read the record to suggest that there was any, unlike in Tapia itself, that there was any prolongation of the sentence that would enable him to participate. And the sentence that was settled on was within the contemplation of the plea agreement. So can you help me point to something that suggests that there was actually a prolongation of the sentence as a result of this consideration? Yes, Judge Carney, if I may, there are several parts, I think, to your question, so I want to make sure I hit all of them. The most important part is that the court is not merely doing what Tapia expressly allows the court to do, which is to say, look, I'm sentencing you to a very long period of time. I hope you take advantage of the rehabilitation programs that the prison may offer or that you get the medical help you need or that I want you to report to me every six months and tell me how you're doing or anything like that. What the court did, and this is at the crucial part of the transcript, where the court is actually explaining why it's imposing the maximum. So this is not a passing reference. This is right in the heart of the court's reasons for the sentence. The court says that one of the reasons, now to be sure it's not the sole reason, we've never contended it's the only reason, but the court explicitly mentions both a very serious need for all these reasons I'm imposing the maximum term. So to put it in the language of plain error analysis, which applies here, the question is, is there a reasonable probability that the reliance on this impermissible factor resulted in a longer sentence than the court would otherwise impose? This court has said that reasonable probability is not a preponderance test. That is, we do not have to show that it's more likely than not that, but for the error, the sentence would be lower. There only has to be sufficient probability that the court can't be confident that the same sentence would be imposed. And so there are several... Mr. Sasse, let me ask you, if the judge had simply said, you know, it's clear to me that you have a very serious need for medical and psychiatric treatment, and given the nature of your crime and the seriousness of it, and the need to promote respect for law and fair punishment, and the fact that I really think you're going to need a lot of counseling, I'm going to sentence you to the following 360 months or 400 months, whatever. Is that a suspect sentence also? Yes, your honor. I think everything was fine up until the very last phrase, which was, I think you're going to need a lot of counseling. Now, that could be ambiguous. That could be a judge just recognizing the fact that... We know in Tapia, it was tied to a specific program. It was a drug rehabilitation program, and the judge specifically sentenced him so that he would complete the program. I mean, it was kind of like, you know, lucky you, you get to spend extra time in jail to be rehabilitated with regard to your drug problem. Thank you very much, your honor, I suppose, is the answer to that. But doesn't this seem more generic to you that Judge Velardo is just pretty much kind of assessing the problems that this fellow has and the size of them, and he's just kind of surmising, geez, it's probably going to take a long time for you to straighten out. You think anytime that there's a reference to the fact that an aspect of the incarceration has a treatment modality to it, any kind of correlation to time... Now, I'm not criticizing him, I'm just asking that you think that that then steps over the line and is inappropriate. No, I wouldn't go that far, Judge. What pushes this case on the Tapia side or the error of things is that you have to look at the context. This is the judge expressly explaining, and the judge himself says, this is why I'm imposing the maximum term on each count. And he cites both the very serious need and the considerable amount of time treatment would take. So he's tying the time treatment would take to the length of the sentence. But there's an and before that phrase. So this is what he says. I think the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, promote respect for the law and to provide a fair punishment, the need for general deterrence and to protect the public from your crimes taking out of circulation for a while, and the very serious need that you have for medical and psychiatric treatment that will require considerable amount of time. They all lead me to impose the maximum sentence that I would impose on each count. And I did that. That's that's true. We don't we don't disagree. But remember, if you go back to top, well, it's not to the exclusion of all the other considerations. It's one of six or seven. I completely agree with you. It is one of six or seven. And that's what renders the sentence procedurally unreasonable is the court is not permitted to consider one of the six or seven. But I would just to go back to both your and Judge Carney's points, Tapia itself, it was not that was not the sole factor in Tapia. Tapia, the judge cited plenty of 30, 55, 53 factors. And in fact, I think this is a stronger case than Tapia. Tapia, remember, the judge imposed 51 months of imprisonment. But to qualify for the program, you only needed 24 or 36 months. And so there was less of a direct line between the length of the sentence and the timing and the sentence was imposed. Now, I should say it is possible because the judge did cite other factors that the court could remand for resentencing. And the judge may say, I've looked at it again. I've looked at Mr. Crumb currently. I've looked at the crimes. I may want to hear from the victims again. All of that can happen. And the court could impose the same sentence. I'm not saying, yeah, that there's necessarily a result. But what the court, the court's normal practice, when the sentencing court explicitly relies on a factor that it's not allowed to consider. And we just don't know how much. But what about in Lipschitz? In Lipschitz, the district court also referred to and discussed the prospects for treatment during the course of incarceration. Is that a lesser reference there? I mean, we didn't send it back in that context. Yes, both Lipschitz and a case called Gileard, those are both distinguishable for the same reason. In Lipschitz, the court ruled that the record provided no indication that the length of the sentence was based on the rehabilitation concerns. So that's what factor that TAPIA forbids. And so what's unknown and unknowable unless there's a remand is, well, how much weight did this carry with the judge? Did the judge add three months to the sentence or five years to the sentence or longer? We just don't know because the judge never said that each factor would independently warrant the maximum or that two or three would and the other wouldn't or that the court would impose the same sentence even if Mr. Crum were in better health. So I think the best course, and I do think we meet the plain error standard, is to remand for resentencing without consideration of the improper TAPIA factor. If there's no further questions, thank you. Thank you. Thank you. We'll hear from the government. Thank you, Your Honors. Good morning. May it please the court. My name is Tiffany Lee, and I represent the United States. Your Honors, the appellate waiver here clearly forecloses consideration of what Mr. Crum has raised on appeal. This court has consistently held that when a defendant waives the right to appeal a sentence, that that waiver is presumptively enforceable. Now, there are limited areas in which the waiver can be, I guess, pierced through, but none of those circumstances are before this court right now. Specifically, Mr. Crum knowingly, voluntarily, and competently waived his right to appeal any sentence that fell within 292 and 365 months. And the way the waiver was written, it specifically stated, notwithstanding the manner in which the court imposes the sentence. In terms of the other exceptions that this court has recognized, which would permit going beyond or piercing the appellate waiver, have been instances in which the sentence was imposed on a constitutionally impermissible factor. That's not the case here. The TAPIA error that's being alleged is one of statutory interpretation, and it's one of which, in terms of how district courts are to administer or weigh the Section 355-3A factors. Your adversary this morning says there's a difference between relying on an impermissible factor and other sorts of guidelines, mistakes, or other sorts of errors in sentencing, and that the line is not between constitutionally impermissible factors, it's between categories of mistake. That's not what this court has held. This court in Aravalo specifically noted constitutionally impermissible factors, such as consideration of race or if there's any bias, anything along those lines. But, in fact, in United States v. Morgan, another one of this court's cases, this court basically said that we cannot breach the waiver simply because there's an alleged perception of illegality of the sentence imposed, because the whole idea is to effectuate a policy where the plea bargaining, so long as it's knowingly, involuntarily, and competently entered into, the plea bargain should be honored. That process should be honored. So, I take it then you would say this is categorically not the kind of potential error that can be recognized, so that even if the district court said what the sentencing court in TAPIA said, you know, I'm going to add five years to your sentence because this is going to qualify you for a rehabilitation program, and this is an important thing for you to do. I want to get reports from you about participating in the program, and I'm adding five years to your sentence so that you can do this and to enable that. TAPIA says that's absolutely contrary to congressional intent in the Sentencing Reform Act, that it's unlawful, and it's a very substantive aspect of the sentence that the Supreme Court focused on. So, you would say that is just not the kind of error that can be recognized on plenary review after an appeal waiver. After an appeal waiver that specifically states that so long as that person is being sentenced within the range that agreed upon by the parties, you know, that this is the potential exposure, that's not... Nonetheless, though, I mean, as a categorical matter, I'm not looking at if the sentencing court explicitly says I'm giving you five extra years, even though it's within the range that was contemplated, but otherwise, I would give you five years less. You would be incarcerated for 10 years as opposed to 15, and that comes up after the appeal waiver, after the plea, that that is still not an error that we can do anything about on review. Is that right? I think not based on what the current... what this court has currently stated in terms of carving out the limited exceptions in which you can look beyond the appellate waiver when it comes to the sentence. Certainly, there are sentencing errors in which this court can definitely look beyond the appellate waiver. And, you know, this court carved those out, not just when the district court relies on impermissible, constitutionally impermissible factors, but also where the record is bereft of any rationale for why the district court is imposing a sentence. Am I right? Go ahead, Miss Lee, finish your thought, and I got a question for you. Your Honor, I think I'm finished. All right. Let me ask you a question. In his submission to the court before sentencing, didn't Crum ask to be sent to the federal medical center? Yes, he did. And wasn't both his physical and his mental disorder part of his presentation to the court with regard to what an appropriate sentence would be? Yes, because he was, you know, if you look at the pre-sentence report, beginning with paragraphs 82 all the way to paragraphs 101, it was full of information concerning not only his physical ailments, but all his mental health history. So all those things came into who is this man that Judge Villardo is going to be sentencing. And for the same reasons that he was using all those materials in order, in the hopes of getting a sentence of, at the low end, five years on at least one count of receipt of child pornography, he included all that information in. And Judge Villardo rightly considered, well, who is this person that I'm sentencing? And this is a person who presents as someone who has a variety of both mental health and physical ailments. And that's why he agreed with the recommendation from Mr. Crum to be hopefully housed in a medical facility as opposed to a regular BOP correctional facility. And so the TAPIA, to the extent if there is a TAPIA error, it's not clear. It's not clear under a plain error review. If you look at the record, there was, you know, Judge Villardo firmly spent a lot of time talking about the nature and circumstances of the offense, talked a lot about the victims and the impact on those victims. And then he did consider his, who is this person? What are your nature and characteristics? Well, you're someone who's really physically ill and you do suffer from some mental health issues. And, you know, in order to protect the public, I'm going to be considering this as well. And, but I agree that you should probably go to a medical facility where they could probably provide you with appropriate treatment. But unlike TAPIA and unlike this court summary order in Neal, it's not as if the promotion of rehabilitation was evident in any, if you read the full sentencing transcript, that that was Judge Villardo's goal in terms of how he fixed the sentence. But then ultimately, what you go back to is what did Mr. Crum gain? The government forego pursuit of child production, child pornography production charges, which themselves carried a mandatory minimum of 15 years imprisonment and a maximum of 40. So it's not as if he did not understand the benefit of his bargain when he entered into this plea agreement. And he knew, he was told explicitly, listen, if I give you a sentence anywhere 365 months or less, you lose out on your right to understand this. And Mr. Crum said, yes. So under both the framework of the appellate waiver, which is presumptively enforceable, the government does not believe that Mr. Crum has met his burden to overcome that presumption. And secondarily, if you're to look at plain error analysis, it's not clear or obvious from the sentencing transcript that there is a TAPIA error. But then notwithstanding that, the question is, is this an error that seriously affects the integrity of the judicial proceedings, especially in front of the public? No, not when you have an appellate waiver where Mr. Crum totally understood what the consequences were or what his benefits were when he entered into the plea bargain. Unless there are any further questions, the government rests on its submission. Thank you. Thank you, Ms. Lee. We'll hear rebuttal. Your honors, thank you. Frankly, I'm offended. I hope some of you are offended that the government would argue that a waiver like this, when there's reliance on a statutory impermissible factor. Mr. Saas, let me ask you a question. In Croston, we said, considering whether we enforce the waiver or not, we look at the nature of the right of issue and two, whether the sentence was reached in a manner that the plea agreement did not anticipate. Isn't it the case that Mr. Crum introduced the idea of rehabilitation by going to a medical, having medical care and counseling? And so, doesn't it seem a little odd to now complain about getting what he asked for? He didn't get what he asked for. He argued it only to get... Well, wait a second. Did he not ask in his sentencing memorandum all three pages of it? For a lower sentence. Excuse me for a second. I haven't finished my question. To be sent to the FMC, to be sent to a medical center, receive counseling, and didn't he ask for counseling? He did. So, so if he, and so he asked the court for counseling and the court, because the court mentions it, then that makes the, A, the waiver outside the parameters of, of, of enforceability and B, the sentence of procedurally unreasonable. With respect, Judge, it's not my position at all. There's no error in going down for a illness, for recommending rehabilitation, for discussing it. The court can discuss it at length for the whole transcript. What it can't do is increase the sentence to promote it. That's what Tapia holds. There's, so the idea underlying the question... And we know that he, wait a second, we know that he increased it from what? We don't know by how much. Okay. Only the district court knows that, but it's by something, otherwise the court wouldn't have mentioned it. It's by some amount. The government's... Why is that necessarily so? He cited several different reasons, any one of which could have been sufficient to protect the public, you know, retribution for the harm done to the, the victims. There's, I don't see that there's any reason to conclude that the district court was accumulating, you know, two years for this purpose, three years for that purpose, and three years for treatment. To me, it could, if the transcript could have read the same, lopping off in a wholesale, the treatment aspect of it. The district court never said that any one of the factors was sufficient. So the question is not, is it possible the judge would have imposed the same sentence? The question is, is there a reasonable probability that he would have imposed a lower sentence? And since the judge himself is emphasizing the considerable amount of time treatment would take, it's a reasonable inference to me that the judge is saying it's factoring into how much time I'm going to get. I don't read it any other way. I just want to look to the government's emphasis on the broad language of the waiver and how knowing it was. Well, the waiver is always broad in these cases. It would cover race. It would cover poverty. It says any sentence, no matter how the court determines it. So that doesn't get you very far. And then the question is, well, the government says that Mr. Crum understood what he was waiving. Well, no one told him that the judge can take into account how sick you are and he may give you more time and you're waiving that. So it was not knowing and it was not understanding. It was precisely what Congress didn't want judges to do. And for this court to hold that that doesn't affect public policy and should be enforced to me is offensive. I hope you agree. The right outcome here, Judge, is not to take the chance. Be careful, Mr. Zais. I'd be careful if I were you. Sorry, Judge. To tell me what the implications of our decision are, I'd be careful if I were you. No, no, no. I'm saying, Judge, I'm sorry. I didn't mean to step on your toes. No, well, you did. I'm sorry. I just, I hope you agree is just what I do hope. My fear, frankly, in closing is that since we don't know how much weight the district court placed on this factor, Mr. Crum could be doing more time than he would do if the improper factor was taken out of the equation. And I think in terms of the reputation of judicial proceedings and the harm, a sort of a balance of hardships test, that'll be a terrible price to pay that he's doing more years in jail, perhaps many more years, based on a factor that Congress says courts shouldn't consider. Thank you. Judge Wesley, again, I apologize. Thank you. Thank you. Thank you. Thank you both. And we will take the matter under advisement.